**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

JONATHAN DIAZ, on behalf of himself and
all others similarly situated,

          Plaintiff,

    v.

THE TRUSTEES OF SMITH COLLEGE
d/b/a SMITH COLLEGE,

          Defendant.

Civil Action No. 3:26-cv-12246-CLM

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SMITH COLLEGE'S
MOTION TO DISMISS**

Plaintiff Jonathan Diaz ("Diaz") fails to state a claim upon which relief can be granted. Diaz claims that Defendant Smith College ("Smith") violated the Massachusetts Wage Act by failing to pay out his unused personal time when his employment was terminated. As explained below, Diaz's Wage Act claim is preempted by federal labor law because it turns on rights and obligations contained in a collective bargaining agreement ("the CBA") between Smith and Local 263, Service Employees International Union AFL-CIO ("the Union"), which represented him. The CBA governs bargaining unit employees' acquisition and use of personal days and explicitly states that personal days "will not be paid in cash wages." The CBA also addresses employees' use of other paid time off, including vacation and sick time. Any determination as to whether Diaz was paid all wages owed to him upon termination necessarily requires an interpretation of the CBA and therefore Diaz's claim is preempted by federal labor law. Diaz's recourse for any alleged violation of the CBA with regard to nonpayment of wages was to file a grievance pursuant to the procedure laid out in the CBA. Because Diaz has failed to exhaust that process, he cannot pursue a fair representation claim under Section 301.

1

In addition, Diaz's Complaint fails to state a claim under the Wage Act because personal time is not a wage covered by the statute. The law is well-established that not all forms of compensation are wages within the scope of the Wage Act. While the statute narrowly defines wages to "include any holiday or vacation payments," personal time is not included in that definition. While Diaz suggests that personal time he received was indistinguishable from vacation time, Smith maintained a separate bank of vacation time for Diaz and paid out all unused accrued vacation time upon his termination. Personal time was accrued on a completely different schedule from vacation time and is not a wage under the statute. Therefore, Diaz's Complaint must be dismissed with prejudice.

## **FACTS AS ALLEGED IN THE COMPLAINT[1]**

Smith is a private institution of higher education located in Northampton, Massachusetts. Compl. at ¶ 7. Diaz alleges that he was employed by Smith from October 2019 until his termination on November 10, 2025. *Id*. at ¶ 17, 20.

I.      The Collective Bargaining Agreement

Diaz alleges that he was employed by Smith as a Maintenance Worker/Custodian. Id. at ¶ 17. Diaz's role was covered by a collective bargaining agreement between Smith and Local 263, Service Employees International Union AFL-CIO, effective July 1, 2024 through June 30, 2027 . A copy of the CBA is attached hereto as Exhibit A.[2]

---

[1] Smith accepts the allegations of the Complaint as true for purposes of this motion only.

[2] Although not attached to the Complaint, this Court may consider and take judicial notice of the CBA. *See e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) (stating that the "complete preemption doctrine" is an "independent corollary to the well-pleaded complaint rule") (internal quotations and citations omitted); *Pennsylvania R. Co. v. Day*, 360 U.S. 548, 553 (1959) ("We can take judicial notice of the fact that provisions in railroad collective bargaining agreements are of a specialized technical nature calling for specialized technical knowledge in ascertaining their meaning and application."); *Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012) (noting that "the CBA has been invoked by defendants and its existence is not disputed by plaintiffs" and stating that "[t]he interrelationship of the state claims and a CBA cannot be avoided merely by refusing to identify the CBA in the complaint and citing

According to the CBA, the standard work week for bargaining unit employees is 40 hours. *See* Exhibit A at p. 9. Under the CBA, employees such as Diaz are eligible to receive paid vacation, sick, and personal time. *Id* at pp. 18, 20, 22. The rate at which employees accrue vacation time depends on their seniority. *Id*. at p. 22. Vacation requests require reasonable prior notice by the employee for requests less than three consecutive work days and prior notice of at least five work days for requests exceeding three consecutive work days. *Id*. at p. 23. Employees are paid out accrued but unused vacation time upon termination of their employment. *Id*. In the case of sick time, employees accrue sick time based on the number of hours worked. *Id*. at p. 21. Unused but accrued sick time is only paid out under specific circumstances to certain senior employees. *Id*. at p. 22.

> With respect to personal time, the CBA states:
>
> An employee on the payroll on July 1 will be credited with the equivalent of Five (5) personal days for use during that fiscal year. An employee hired after July 1 will be credited with one and a quarter (1.25) personal day for each calendar quarter remaining in the fiscal year. If an employee leaves the college, personal time entitlement will be prorated based upon the date of termination.
>
> The request for a Personal Day must be submitted in writing to the supervisor at least twenty-four (24) hours in advance and approval will not be unreasonably withheld. Personal Days must be taken as a day off from work in the fiscal year and will not be paid in cash wages and may not be carried forward from year to year. . .

*Id.* at p. 18. An employee who is hired after the start of the fiscal year on July 1 is provided a prorated number of personal days. *Id.* The CBA authorizes employees to use up to sixteen hours

---

the well pleaded complaint rule"); *Barry v. UMass Memorial Medical Center*, Inc., 245 F. Supp. 3d 323, 234, n. 1 (D. Mass. 2017) ("Although the CBA was attached as an exhibit to [defendant's] motion, this Court may consider it in the context of the motion to dismiss [based on Section 301 preemption] because the document's authenticity is not disputed and it is central to Plaintiff's claims.") (citing *Curran v. Cousins*, 509 F.3d 36, 44 (1st Cir. 2007)).

of personal time annually for personal or family emergencies by calling a designated call-out line prior to their shift on the day of the emergency. *Id.*

The CBA establishes a procedure for resolving grievances between bargaining unit employees and Smith. *Id.* at p. 7. If a grievance is denied or if the Union is not satisfied with the outcome of a grievance, it may submit the dispute to arbitration. *Id.* at p. 8.

II.      Plaintiff's Allegations

Diaz alleges that at the beginning of the fiscal year, eligible Smith employees receive paid personal days to be used for any purpose. Compl. at ¶ 14. Diaz claims that at the time of his termination, he had 37 hours of unused personal time that Smith did not pay out. *Id*. at ¶¶ 21, 22. He alleges that by withholding payment for unused personal time, Smith deprived him of wages in violation of the Wage Act. *Id*. at ¶ 23.

**ARGUMENT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Diaz's Complaint should be dismissed with prejudice because it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action . . . do not suffice." *Id.* Rather, the plaintiff bears the burden of pleading facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In applying this standard, the Court "isolate[s] and ignore[s] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). Then, the remaining "well-pled (*i.e.*, non-conclusory, non-speculative) facts [are] taken as true" to "see if they plausibly narrate a claim for relief." *Id.*

Diaz's Wage Act claim is preempted by Section 301 of the Labor Management Relations Act ("LMRA") and is barred by the CBA's grievance and arbitration procedure, which he has failed to exhaust. Further, his Complaint must be dismissed because personal time is not a wage covered by the Wage Act.

## I.    DIAZ'S WAGE ACT CLAIM IS PREEMPTED BY FEDERAL LABOR LAW

Diaz's claim is completely preempted by federal labor law. Section 301 provides for complete preemption of disputes arising under a collective bargaining agreement. 29 U.S.C. § 185(a). Because the country's labor policies are national in scope, "in enacting 301, Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules." *Int'l Bhd. of Elec. Workers v. Hechler*, 481 U.S. 851, 857 (1987) (quoting *Int'l Bhd. of Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962)). As a result, "a suit . . . alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985) (citing *Lucas Flour Co.*, 369 U.S. at 103-104).

The preemptive scope of Section 301 is not limited to suits alleging a violation of the applicable labor agreement. Rather, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers*, 471 U.S. at 220 (internal citation omitted); *see also Cavallaro*, 687 F.3d at 5 (stating that the Supreme Court "explicitly extended complete preemption to state law claims founded directly on rights created by collective-bargaining agreements or substantially dependent on analysis of a collective-bargaining agreement") (internal quotations and citations omitted). A state law claim cannot escape preemption unless "it requires no more than 'bare' consultation of a CBA, without

dispute as to 'the meaning of [any] contract terms.'" *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021) (quoting *Livada v. Bradshaw*, 512 U.S. 107, 124 (1994)). "If a claim plausibly requires interpretation of one or more provisions of a CBA, it comes within the LMRA's preemptive sweep." *Rose*, 1 F.4th at 61.

The cornerstone of Diaz's Wage Act claim is an allegation that unused personal time is a wage that must be paid out upon an employee's termination. However, with respect to Diaz, this issue cannot be addressed without interpreting the CBA, which governs the receipt and use of personal time for Union employees. To determine whether Diaz was paid all wages owed to him upon termination, the Court must necessarily interpret the language of the CBA. For example, Diaz alleges that on the date of his termination, he had 37 hours of personal time available to him. Because the CBA provides for the proration of personal time entitlements for employees who leave Smith, a determination of how much personal time Diaz had available when he was terminated requires an interpretation of the CBA. Therefore, Diaz's Wage Act claim is preempted by the LMRA and must be dismissed. *See Cavallaro*, 678 F.3d at 8 (affirming dismissal of plaintiffs' Wage Act claims where determining what (if any) wages were owed to plaintiffs depended "at least arguably on interpretations and applications of the CBA"); *Mitchell v. Globe Newspaper Co.*, 602 F. Supp. 2d 258, 261 (D. Mass. 2009) (dismissing plaintiff's Wage Act claim for unpaid vacation time pursuant to the LMRA because the claim was "dependent on the CBA vacation pay provision"); *Caswell v. Ferrara & Sons, Inc.*, No. 01-11993-JLT, 2002 WL 31986854, at *3 (D. Mass. July 30, 2002) (finding that plaintiff's Wage Act claim for unpaid vacation pay was preempted by federal labor law because resolution of the claim required interpretation of the CBA to determine whether plaintiff had earned vacation pay).

## II.    DIAZ'S WAGE ACT CLAIM CANNOT BE TREATED AS A SECTION 301 CLAIM

Diaz cannot assert a Section 301 claim because he has not exhausted the grievance procedure as established by the CBA. Before an employee may bring a suit against his employer under Section 301, he must attempt to exhaust any exclusive grievance and arbitration procedures established by the collective bargaining agreement. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). To allow otherwise would "deprive the employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances." *Id.* at 653. Accordingly, where an individual's state law claim is preempted by federal law and may only be brought as a Section 301 claim under the LMRA, it may be dismissed where the employee failed to timely exhaust the grievance procedures set forth in the collective bargaining agreement. *See White*, 548 F. Supp. 3d at 274 ("'Plaintiffs' failure to exhaust available grievance procedures under the CBA precludes this Court from treating those claims as having been brought under § 301, and dismissal is thus required'"), quoting *DiGiantommaso v. Globe Newspaper Co.*, 632 F. Supp. 2d 85, 90 (D. Mass. 2009); *Rose v. RTN Fed. Credit Union*, No. 19-cv-11854, 2019 WL 1237555, at *1, (D. Mass. Dec. 9, 2019) (holding that adjudication of plaintiff's claims to recover unpaid wages required interpretation of the CBA and that "[d]ismissal is appropriate if plaintiffs have not previously raised the claims through the grievance procedure"), *aff'd* 1 F.4th 56 (1st Cir. 2021).

Diaz has not alleged (and cannot allege) that he exhausted this procedure with respect to his wage claim. *See generally*, Complaint ¶¶ 1-38. Therefore, he is precluded from bringing a duty of fair representation claim under Section 301 of the LMRA and his Wage Act claim must be dismissed. *See Allis-Chalmers Corp.*, 471 U.S. at 220-21 (holding that the "complaint should have been dismissed for failure to make use of the grievance procedure established in the collective-bargaining agreement or dismissed as pre-empted by § 301") (internal citation omitted); *White*, 548

F. Supp. 3d at 274 (granting employer's motion to dismiss plaintiffs' Massachusetts statutory and common law claims on Section 301 preemption grounds where "[p]laintiffs do not allege that they followed the CBA's grievance process, nor have they refuted defendant's allegation that they did not do so").

### III.    PERSONAL TIME IS NOT A WAGE UNDER THE WAGE ACT

In addition to the preemption grounds for dismissing Diaz's claim, his Complaint also fails to state a claim because personal time is not a wage covered by the Wage Act. Thus, Smith was not required to pay out Diaz's personal time upon the termination of his employment.

The Wage Act requires that "any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday; and any employee discharged from such employment shall be paid in full on the day of his discharge." M.G.L. c. 149, § 148.  While the Wage Act does not define "wages," the Supreme Judicial Court has emphasized that "[n]ot all forms of employee compensation or benefits are 'wages'" under the Act. *Nunez v. Syncsort Inc.*, 496 Mass. 706, 709 (2025) (citing *Boston Police Patrolmen's Ass'n v. Boston*, 435 Mass. 718, 721 (2002) (contributions to deferred compensation plan are not "wages")).  Rather, the language of the statute specifies that "wages" "shall include any holiday or vacation payments due an employee under an oral or written agreement," and "so far as apt, . . . payment of commissions when the amount of such commissions . . . has been definitely determined and has become due and payable." M.G.L. ch. 149, § 148.  Thus, the Wage Act covers only certain, limited types of compensation, and "because the Wage Act carries criminal penalties . . . courts have been reluctant to extend its reach beyond the wages . . . which the statute expressly mentions." *Noreke v. Gideon Taylor Consulting, LLC*, No. 23-CV-11161-DJC, 2025 WL 2370952, at *3 (D. Mass. Aug. 14, 2025) (internal citation omitted); *Nunez*, 496 Mass. at 709

8

("Severe consequences may flow from even minor violations of the Wage Act, including potential criminal liability, treble damages, and personal civil liability against a company's owner."). As a result, the SJC has repeatedly held that the Wage Act must be construed narrowly. *Mui v. Massachusetts Port Auth.*, 478 Mass. 710, 713 (2018) ("We have not broadly construed the term 'wages' for the purposes of the act . . ."); *Nunez*, 496 Mass. at 710 (same);[3] *see also Weiss v. DHL Exp., Inc.*, 718 F.3d 39, 47 (1st Cir. 2013) ("In refusing to adopt a broad definition of wages covered under the Act, Massachusetts courts speak of the Act's purpose—'to prevent the unreasonable detention of wages.'") (quoting *Bos. Police Patrolmen's Ass'n, Inc. v. City of Bos.*, 435 Mass. 718, 720 (2002)).

Personal time is not a wage under the Wage Act. Massachusetts courts have repeatedly rejected efforts to extend the definition of wages to categories of paid time off beyond vacation time. *See Mui*, 478 Mass. at 712-13 (holding that accrued, unused sick time was not a wage under the Wage Act because it was not compensable under a "use it or lose it" sick time policy); *Souto v. Sovereign Realty Assocs., Ltd.*, No. 0501281, 2007 WL 4708921, at *4 (Mass. Super. Dec. 14, 2007) (holding that employee was not entitled to recover under the Wage Act for unused personal and sick time absent express agreement with his employer); *Furtado v. Republic Parking Sys.,*

---

[3] As recently as October 2025, the SJC reiterated the limited scope of the statute in *Nunez*, noting Massachusetts "appellate cases have uniformly rejected attempts to include other forms of contingent compensation within the meaning of 'wages.'" 496 Mass. at 710-11 (citing *Mui*, 478 Mass. at 713 (accrued, unused sick time not "wages" because only available to departing employees meeting certain eligibility criteria); *Weems v. Citigroup Inc.*, 453 Mass. 147, 153-54 (2009) (discretionary stock option plan not wages because contingent on continued employment); *O'Connor v. Kadrmas*, 96 Mass. App. Ct. 273, 288 (2019) (profit distributions under stock agreement not wages because, among other reasons, of their contingent nature); *Prozinski v. Northeast Real Estate Servs., LLC*, 59 Mass. App. Ct. 599, 603 (2003) (severance pay not wages because contingent upon severance)); *see also Weiss v. DHL Express, Inc.*, 718 F.3d 39, 47-48 (1st Cir. 2013) (retention bonus not "wages"); *Sheedy v. Lehman Bros. Holdings Inc.*, No. CIV.A. 11-11456-RGS, 2011 WL 5519909, at *1 (D. Mass. Nov. 14, 2011) (incentive signing bonus depending upon employee retention not "wages"); *Doucot v. IDS Scheer, Inc.*, 734 F. Supp. 2d 172, 193 (D. Mass. 2010) (bonus not "wages"); *Sterling Rsch., Inc. v. Pietrobono*, No. CIV.A. 02-40150-FDS, 2005 WL 3116758, at *14 (D. Mass. Nov. 21, 2005) (equity under stock agreement not wages).

*LLC*, No. 19-CV-11481-DJC, 2020 WL 996849, at *3 (D. Mass. Mar. 2, 2020) (dismissing claim under the Wage Act for paid time off labeled as comp time and declining to expand the scope of the Wage Act).  In *Mui*, the SJC declined to expand the Wage Act to cover accrued sick time.  478 Mass. at 713.  In that case, the court reasoned that "although an employee may use accrued sick time under appropriate conditions, such time may be considered 'lost' if not used."  *Id.*  Under those circumstances, "[b]ecause accrued, unused sick time is not compensable under a 'use it or lose it' sick time policy, such time clearly is not a wage under the act."  *Id*. Like the accrued sick time in *Mui*, Diaz received personal time each year on a "use it or lose it" basis. *See* Exhibit A at p. 18 ("Personal Days must be taken as a day off from work in the fiscal year and will not be paid in cash wages and may not be carried forward from year to year"). Thus, the personal days at issue are akin to the accrued sick time in *Mui* and are not a wage under the Wage Act.

Diaz suggests in his Complaint that his unused personal time should be treated as vacation time because it could be used for any purpose and its use was not restricted by any contingencies. Compl. at ¶ 15. However, Diaz had a separate bank of vacation time which *was* paid out to him upon his termination. Use of vacation time requires prior notice to Smith, while personal time can be used for personal or family emergencies. Where Smith has clearly defined separate allotments for personal and vacation time with different notice requirements, these two types of paid time are distinguishable. In fact, the Office of the Attorney General has made clear that paid time off other than vacation time is different and does not need to be paid out.  In the Massachusetts Attorney General's Advisory 99/1 ("An Advisory from the Attorney General's Fair Labor Division on Vacation Policies"), the Attorney General recognized that "[s]ome employers combine sick leave, personal leave, vacation leave, and/or other types of leave into one general category called 'annual leave.'"  It explained that employers who do so must designate the amount of hours or days that

10

are considered vacation time, and such time must be paid out upon termination. *Id.* Thus, the Attorney General has recognized that employers will offer other types of paid time off, including personal leave, and such leave *does not* need to be paid out upon termination. Moreover, in a case that analyzed whether vacation must be paid under the Wage Act, the SJC explicitly held that Attorney General's Advisory 99/1 should be given substantial deference. *See Elec. Data Sys. Corp. v. Att'y Gen.*, 454 Mass. 63, 68-71 (2009) (Relying on Advisory 99/1 and holding, "The duty of statutory interpretation is for the courts, to be sure, but '[i]nsofar as the Attorney General's office is the department charged with enforcing the wage and hour laws, its interpretation of the protections provided thereunder is entitled to substantial deference, at least where it is not inconsistent with the plain language of the statutory provisions.'") (quoting *Smith v. Winter Place LLC*, 447 Mass. 363, 367-368 (2006) (discussing Attorney General advisory interpreting M.G.L. ch. 149, § 148A)). Thus, the Advisory is persuasive authority and the logic applies here. Where Diaz's personal time was completely separate from his vacation time, it was not a wage under the Wage Act and was not payable upon his termination. His Complaint should be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Smith requests that the Court dismiss Diaz's Complaint in its entirety and with prejudice.

DATED: May 22, 2026                          Respectfully submitted,

                                             By Its Attorneys,


                                             By: */s/ Robert A. Fisher*
                                             Robert A. Fisher (BBO# 643797)
                                             rfisher@seyfarth.com
                                             Alison H. Silveira (BBO# 666814)
                                             asilveira@seyfarth.com
                                             Nicole Ricker (BBO# 713593)
                                             nricker@seyfarth.com
                                             SEYFARTH SHAW LLP
                                             Seaport East
                                             Two Seaport Lane, Suite 1200
                                             Boston, Massachusetts 02210-2028
                                             Telephone:    (617) 946-4800
                                             Facsimile:    (617) 946-4801


## CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2026, a true copy of the forgoing document was electronically filed through the Court's ECF system on all counsel of record:

Francis J. Bingham                           Raymond Dinsmore, Esq
Francis.bingham@binghamhopkins.com           rdinsmore@hayberlawfirm.com
Bingham Hopkins LLC                          Ryan B. Guers, Esq.
20 University Road, Suite 500                rguers@hayberlawfirm.com
Cambridge, MA 02138                          Hayber, McKenna, & Dinsmore, LLC
                                             One Monarch Place, Suite 1340
                                             Springfield, MA 01144


*/s/ Robert A. Fisher*
Robert A. Fisher

12