# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## (WESTERN DIVISION)

| | |
|---|---|
| JONATHAN DIAZ, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>THE TRUSTEES OF SMITH COLLEGE d/b/a/ SMITH COLLEGE,<br><br>     Defendant. | Civil Action No. 3:26-cv-12246-CLM |

**PLAINTIFF JONATHAN DIAZ'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND CROSS-MOTION TO REMAND TO STATE COURT**

## I. **<u>INTRODUCTION</u>**

This class action lawsuit asks a court to decide whether an employee's paid "personal time" is a "wage" protected by the Massachusetts Wage Act. Defendant, The Trustees of Smith College d/b/s Smith College ("Smith") maintains a written human resources ("HR") policy offering paid personal time to eligible employees annually, but it retains the value of the unused balance when an employee separates. This policy applies to both unionized and non-unionized employees alike. The claims of a unionized employee, like Plaintiff Johnathan Diaz, and an as-yet unnamed non-unionized class member are completely indistinguishable. Regardless of union status, all class members suffered the same injury: deprivation of earned wages upon termination. Smith removed the case on the grounds that the suit is preempted by § 301 of the federal Labor Management Relations Act ("LMRA"). But § 301 does not preempt this claim – and no federal jurisdiction exists in the first place – because its resolution is based on the Massachusetts Wage Act and does not require the Court to interpret any provision of a collective bargaining agreement ("CBA").

Unlike wage claims that have been held preempted under the § 301 of the LMRA, this case does not present any dispute over the amount owed to Diaz, whether his personal time was properly accounted for, the rate at which it should be paid out, or any other question that would require interpretation of the CBA for unionized employees like Diaz. Instead, the claim requires only a determination of the rights under Massachusetts law that arise independent of any CBA, which is a task best left to state courts.

As the Supreme Court has repeatedly emphasized, preemption under § 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994); *see also Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 212 (1985) ("Clearly, § 301 does not grant the parties to a collective-

1

bargaining agreement the ability to contract for what is illegal under state law."); *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 411 (1988) ("[S]ubstantive rights in the labor relations context can exist without interpreting collective-bargaining agreements."); *Lawless v. Steward Health Care System, Inc.*, 894 F.3d 9, 18 (1st Cir. 2018) ("[S]ection 301 does not 'preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" (*quoting Lueck*, 471 U.S. at 212)). Here, the Wage Act confers Massachusetts employee the right to be paid their wages, including the value of any accrued holiday or vacation time, upon "leaving [their] employment." M.G.L. c. 149 § 148. The only question to be answered is whether personal time constitutes "wages" under the Wage Act, but that question must be answered through interpretation of state law, not through construction of any CBA. The fact that Diaz is subject to a CBA while non-unionized class members are not – while their claims are identical – underscores that the CBA is irrelevant to the question at hand. This case can be resolved without even pulling the CBA off the shelf, much less interpreting its terms. Consistent with Supreme Court and First Circuit precedent, the Court should reject Smith's long-shot preemption argument and remand this matter to state court where it belongs.

Smith's separate argument that the case should be dismissed on a Rule 12(b)(6) motion because personal time is *never* a compensable wage, as a matter of law, does not withstand even light scrutiny. The weight of authority in Massachusetts establishes that personal time *is* a wage and must be paid upon termination – just the opposite of what Smith contends. *See e.g., Byrnes v. Lukes*, No. 0985-CV-01403, 30 Mass. L. Rptr. 413, 2012 WL 6608974, at *1 (Mass. Super. Sept. 27, 2012). Smith relies on the Supreme Judicial Court's decision in *Tze-Kit Mui v. Massachusetts Port Authority*, holding that sick time is not a wage, but omits the key passage which explains why unrestricted paid time off, like vacation time, differs from sick time and is properly treated as a wage. *See Mui*, 478 Mass. 710, 712 (2018). The SJC explained that "unlike vacation time,

which can be used for time away from work for any reason, sick time is to be used only when the employee or a family member is ill." *Id.* As detailed in Plaintiff's Complaint, personal time can be used for any reason and is not tethered to any specific contingency. and thus, it is a wage and must be paid upon termination. Complaint ("Compl.") ¶¶ 3-4, 14-16. This District has rejected a similar argument on a motion to dismiss. *Roche v. Morgan Collection, Inc.*, 882 F. Supp. 2d 247, 257 (D. Mass. 2012). Moreover, a state superior court decision held *as a matter of law on summary judgment* that personal time *is* a wage that must be paid upon termination. *Byrnes*, 30 Mass. L. Rptr. 413, 2012 WL 6608974, at *1. In short, Smith's motion to dismiss lacks merit and should be denied, and the case should be remanded to superior court.

## II.     BACKGROUND

On March 26, 2026, Diaz sued Smith in Hampden County Superior Court, asserting a single claim for violation of the Wage Act, M.G.L. c. 149 § 148, arising out of Smith's failure to pay him for 37 hours of accrued personal time upon separation from employment. Compl. ¶¶ 21-22. While Smith contends that "a determination of how much personal time Diaz had available … requires an interpretation of the CBA," Smith's own internal records establish there is no such dispute. *See* Diaz's PTO Workday Balance (as of on or about Nov. 9, 2025) (showing 37 hours of "Personal" time) (filed herewith as Exhibit "A"). Diaz seeks to represent a class of all employees of Smith who, like him, were not paid for their accrued personal time following their separation from employment, in violation of the Wage Act. Compl. ¶ 28.

Smith maintains a policy governing personal time. Smith College, Employee Handbook, Personal Time, Section 502, https://www.smith.edu/your-campus/offices-services/human-resources/employee-handbook/time-benefits-leave-plans/personal, (last accessed June 1, 2026) (a printout of the policy is filed herewith as Exhibit "B"). The HR policy provides that employees in regular or limited-term positions of half time or more are eligible for paid personal time. *Id.* It

further provides that personal time "must be used by the end of each fiscal year," and that employees "will not be paid for unused personal time either at the end of the fiscal year or if [they] leave the college." *Id.* The HR policy states that personal time requests generally require advance approval from a supervisor, although same-day requests may be made in cases of family illness or other emergencies and, in most instances, will be honored. *Id.* The HR policy states that personal time is earned on a quarterly basis but credited in advance, that employees hired during the fiscal year receive prorated personal time, and that employees who leave the college "will not be paid for unused personal time." *Id.*

The CBA between Local 263, Service Employees International Union AFL-CIO and Smith contains a substantively similar personal time policy applicable to unionized employees, such as Diaz, who was employed as a maintenance worker. Doc. No. 11-1 at pp. 18-19, Compl. ¶¶ 17. The CBA provides that eligible bargaining unit employees receive five personal days for use during the fiscal year, that employees hired after July 1 receive prorated personal time, and that personal time entitlement will be prorated if an employee leaves the college. Doc. No. 11-1 at p. 18. Similar to Smith's HR personal time policy, the CBA indicates that personal days "must be taken as a day off from work in the fiscal year and will not be paid in cash wages and may not be carried forward form year to year." *Id.* The CBA provides that employees who wish to use personal days must request approval from their supervisor at least 24 hours in advance. *Id.* The CBA also permits bargaining unit employees to use up to 16 hours of personal time annually for personal or family emergencies. *Id.*

Although Smith's motion to dismiss focuses almost exclusively on the language governing personal days contained in the CBA, Diaz challenges Smith's broader policy that results in the forfeiture of accrued personal time following separation from employment, which applies equally to both unionized and non-unionized workers. Regardless of whether employees

are subject to the HR policy alone or the CBA and HR policy together, the underlying facts are the same. Smith provides personal time to eligible employees, allows those employees to accrue and use personal time during their employment, and – as with paid vacation – imposes no specific contingencies on the use of personal time. But it refuses to pay the cash value of accrued personal time following an employee's separation. Ex. B; Doc. No. 11-1 at p. 18.

III.  **ARGUMENT**

A.  **LMRA Preemption Applies Only if the Court Must Interpret the Terms of a CBA to Resolve the Dispute – Not Merely Because a Plaintiff Belongs to a Union or the Litigation May Involve Passing Reference to the CBA.**

The LMRA confers jurisdiction on federal courts to resolve "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a).  Section 301 of the LMRA requires that federal common law govern such suits, and preempts any state law claims whose resolution "requires the interpretation of a collective-bargaining agreement," *Lingle*, 486 U.S. at 413; *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957);.  As the Supreme Court explained in *Caterpillar Inc. v. Williams*, preemption under § 301 applies to any state law claim that is either "founded directly on rights created by collective-bargaining agreements" or "'substantially dependent on analysis of a collective-bargaining agreement.'" 482 U.S. 386, 394 (1987) (*quoting Electrical Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987)). As the removing party, Smith bears the burden of proving that this Court has federal question jurisdiction. *Rose v. RTN Fed. Credit Union*, 1 F.4th 56, 61 (1st Cir. 2021).

The purpose of LMRA preemption is to ensure consistency in the interpretation of CBAs and to preserve the effectiveness of arbitration by allowing arbitrators rather than courts to interpret labor contracts. *Lingle*, 486 U.S. at 411 (federal preemption under § 301 assures that "interpretation of collective-bargaining agreements remain firmly in the arbitral realm"). But not

all disputes involving union members and their employers, or even all disputes concerning the provisions of a CBA, are preempted by § 301. "Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301." *Caterpillar*, 482 U.S. at 396 n.10. "[S]tate law claims that require 'only consultation with the CBA,' as opposed to 'actual interpretation' of the CBA, 'should not be extinguished.'" *Lawless*, 894 F.3d at 18 (*quoting Adames v. Exec. Airlines, Inc.*, 258 F.3d 7,12 (1st Cir. 2001)). An overly broad reading of LMRA preemption would impermissibly confer upon unions and employers the "power to exempt themselves from whatever state labor standards they disfavored" and the "ability to contract for what is illegal under state law." *Lueck* 471 U.S. at 212. Thus, § 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas*, 512 U.S. at 123. A contrary rule "'would provide union employers with irresistible incentive to pour into the collective bargaining agreement all the safety, insurance, and individual rights protected by state law, and then claim immunity from suit ... [s]uch a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored.'" *Cullen v. Henry Haywood Mem'l Hosp.*, 95 F. Supp. 3d 130, 137 (D. Mass. 2015) (*quoting LaRosa v. United Parcel Serv., Inc.*, 23 F. Supp. 2d 136, 144 (D. Mass. 1998)).

The "basic test" for assessing § 301 preemption is whether the court, "in passing upon the claim, would be required to interpret the collective bargaining agreement." *Flibotte v. Penn. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997). "In practice, this test boils down to whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement." *Id.* A claim can "'depend' on the 'meaning' of a [CBA] if it alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement," or if its "resolution arguably hinges upon an

interpretation of the [CBA]." *Id.* That said, an employer cannot invoke § 301 merely by raising a defense based on a CBA. *Caterpillar*, 482 U.S. at 399 ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." (emphasis in original)). The Supreme Court has made clear "that a plaintiff covered by a [CBA] is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a [CBA]." *Id*. at 396 (emphasis in original). A state law claim will not be preempted "if it requires no more than a 'bare' consultation of a CBA, without dispute as to 'the meaning of [any] contract terms.'" *Rose*, 1 F.4th at 61 (*quoting Livadas*, 512 U.S. at 124).

Applying this standard, numerous federal courts in this and other circuits have rejected employers' attempts to use § 301 to escape liability under state wage laws where, as here, they are merely brought by workers covered by a CBA and their claims do not require interpretation of the CBA. For example, in *McKinney v. Steward St. Elizabeth's Med. Ctr. of Bos., Inc.*, the court held that the plaintiff's claim for failure to pay all accrued paid time off ("PTO") upon separation was not preempted under the LMRA because there was no dispute about the amount of wages owed. No. 23-CV-12115-GAO, 2024 WL 1509212, at *6-7 (D. Mass. Feb. 2, 2024). The employer argued that LMRA preemption applied because the plaintiff's right to PTO derived from the CBA and was not required under the Wage Act. *Id.* at *3. The court rejected that argument, holding that it "stretche[d] § 301's complete preemption doctrine well beyond its recognized margins." *Id*. at *5. Even though the entitlement to PTO was "born of the governing [CBA]," the employer's obligation to pay those wages was an obligation of state statute. *Id*. at *6. And, "once it became clear that the plaintiff's claim was only for penalties under the

Massachusetts Wage Act (and thus was not a dispute about the amount of wages owed under a CBA), 'any prospect for preemption vanished.'" *Id*. at *5 (quoting *Lawless*, 894 F.3d at 19).

Remand – and denial of a motion to dismiss – is also required when state wage laws govern the outcome of the case regardless of what is contained in the CBA. This was the result in *Hamel v. Western Mass. Electric Co.*, which involved a group of unionized electrical workers who alleged that their employer required them to work 8.5 hours with a half-hour unpaid meal break, but "failed and refused to relieve" them from work duties during the break. No. 22-30097-MGM, 2023 WL 12051503, at *1 (D. Mass. Aug. 4, 2023). The court held that because the complaint alleged that the employers had actual knowledge of the plaintiffs' unpaid work hours, state law granted a right to payment for that time "'regardless of whether it would be compensable under the CBA.'" *Id.* at *3 (*quoting Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 62 (1st Cir. 2016)). Accordingly, there was "no plausible reason that resolution of this claim would require interpretation of the CBA" and, as such, the LMRA did not preempt the claim. *Id*.

Courts have also held that there is no LMRA preemption when a claim requires mere consultation or application of the CBA, but none of its provisions are in dispute or require interpretation. *See Hernandez v. Harvard Univ.*, No. 12-11978-DPW, 2013 WL 1330842, at *2 (D. Mass. Mar. 28, 2013) (claims under Massachusetts tips law remanded because employer could not identify "what parts of the CBA are plausibly in dispute or need to be interpreted, rather than merely consulted or applied"); *Kline v. Security Guards, Inc.,* 386 F.3d 246, 256 (3d Cir. 2004) (preemption not warranted where defendant "do[es] not point to any specific provision of [the CBA] that must be interpreted in order to resolve [plaintiff's] claims").

This Court also declined to apply LMRA preemption in *Glynn v. Martin Sports & Ent., LLC*, which involved an employer's refusal to pay wages owed pursuant to a CBA. No. 1:19-CV-12189-IT, 2021 WL 4295774 (D. Mass. Sept. 21, 2021). The court held that the LMRA did not

preempt the plaintiffs' claims because the employer did not dispute the meaning of the CBA's terms (setting forth wage rates), but instead challenged whether the CBA's terms "were modified" and "the work was performed as requested." *Id*. at *3. Such inquiries, the court held, did "not come 'within the LMRA's protective sweep.'" *Id*. (*quoting Rose*, 1 F.4th at 61).

By contrast, courts have applied LMRA preemption to claims that require the court to analyze and interpret some disputed language in the CBA itself. *See, e.g., Rose,* 1 F.4th at 62 (adjudicating whether plaintiff was owed additional wages for commuting to a different branch location would "'require construing and applying the various peculiarities of industry-specific wage and benefit structures embodied in the CBA'") (*quoting Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 8 (1st Cir. 2012)); *Davis v. N.E. Ctr. for Youth & Families, Inc.*, 662 F. Supp. 3d 151, 157 (D. Mass. 2023) (claim for overtime pay preempted because the CBA contained a complicated and fluctuating wage structure enshrined in multiple different provisions, which the court would have to interpret to adjudicate the claim); *Arnstein v. MVM, Inc.*, No. 12–10666-RWZ, 2012 WL 4863043, at *3 (D. Mass. Oct. 12, 2012) (meal break claims preempted because determining whether the plaintiffs were at "work" during break required interpreting the CBA's definition of "work" and "break," and whether the breaks were necessary to comply with federal security requirements necessitated interpretation of several provisions of the CBA); *Clee v. MVM, Inc.*, 91 F. Supp. 3d 54, 63 (D. Mass. 2015) (claim to collect wages for unpaid work was preempted because it required interpretation of the CBA to determine whether shifts contemplated preparation time, to construe the meaning of the word "report," and to determine the effect of "Government action" on the agreement); *Mitchell v. Globe Newspaper Co.*, 602 F. Supp. 2d 258, 261 (D. Mass. 2009) (LMRA preemption applied because the dispute was over not just the plaintiffs' entitlement to vacation pay, but also the proper rate of vacation pay, which required interpretation of the CBA to resolve); *Teixeira v. Quality Beverage Ltd.*

*P'ship*, 351 F. Supp. 3d 188, 192-93 (D. Mass. 2019) (LMRA preemption applied because plaintiffs' wage claim was based on a provision in the CBA limiting the amount an employee could be required to contribute to health insurance premiums and there was no independent limit on such contributions in Massachusetts law).

Anticipating a case like this one, the First Circuit cautioned in *Cavallaro* that when there is "no dispute about the amount" owed, and when the claim turns on whether wages were properly "paid under the terms of the state law," then preemption is not appropriate. *Cavallaro*, 678 F.3d at 8. There, plaintiffs sought compensation for pre-and post-shift work, meal breaks, and training sessions. *Id.* The First Circuit concluded that these issues "require[d] construing and applying the various 'peculiarities of industry-specific wage and benefit structures' embodied in the CBA," but the court took care to contrast the very different situation, presented in this case, where there is no dispute about the amount owed. *Id.* (*quoting Adames*, 258 F.3d at 13).

These cases underscore that the LMRA's purpose is not to deprive unionized workers of state law wage protections merely because they belong to a union, but rather to ensure that *disputes about the meaning and application of a CBA itself* are subject to a uniform body of law. After all, § 301 applies to "suits for *violation of* contracts between an employer" and a union, not all suits brought by unionized employees. (emphasis added). Any doubts about the Court's jurisdiction under the removal statute should be resolved in favor of remand. 14C Charles Alan Wright *et al.*, Federal Practice and Procedure § 3739.1 (4th ed. Rev. 2025) ("[A] great many cases can be cited for the proposition that if federal subject-matter jurisdiction over a removed case is doubtful, the case should be remanded to state court.").

**B. Resolution of Diaz's Wage Act Claim Does Not Plausibly Require Interpretation of the CBA.**

The LMRA does not preempt Diaz's Wage Act claim because the claim exists independently of the CBA, and there is no reason to interpret or apply the CBA's provisions to resolve this dispute. Diaz's dispute with Smith is confined to the limited question of whether Smith may withhold payment of his earned personal time upon separation. To determine whether Smith withheld payment, the Court need only consult Smith's internal personal time records and Diaz's final paystub. To determine whether Smith may lawfully withhold such payment, the court need only consult Massachusetts state law. As explained in detail below, the SJC's decision in *Mui* establishes that personal time is a "wage" as defined by Massachusetts law because, unlike with sick time, there are no specific conditions to using it. 478 Mass. at 713.

This case is analogous to cases like *McKinney* and *Hamel* – neither of which makes an appearance in Smith's brief – where LMRA preemption did not apply. In *McKinney*, the plaintiff was paid some, but not all, of the earned PTO reflected on her final paystub. 2024 WL 1509212 at *1. She sued to recover the rest and the court held that the LMRA did not preempt her suit because the discrepancy was attributable to a clerical error, not a dispute over the PTO owed under the CBA. Thus, no interpretation of the CBA was necessary to vindicate her state law right to be paid out earned PTO upon separation. *Id.* at *5-7. The court rejected the employer's argument that because the CBA provided the plaintiff with the right to PTO, it was the CBA, not Massachusetts law that was the source of her asserted rights. *Id.* The court reasoned that although the plaintiff's "initial entitlement to …PTO … is born of the governing employment agreement, *i.e.*, the CBA," once she "earned" her PTO, her employer's "obligation to pay those wages becomes an obligation of statute, not merely of contract." *Id*. at *6.

This case presents an even stronger argument not to apply LMRA preemption because the underlying right to personal time stems from an HR policy that applies to both unionized and non-unionized employees, and the CBA largely reflects that policy. But even if the CBA were the only source of Diaz's right to personal time, once he accrued the time, the Wage Act required Smith to pay it out on separation – just like the Wage Act does not require vacation to be offered in a CBA or otherwise, but if it is offered, the balance of it must be paid upon termination. M.G.L. c. 149 § 148. In other words, as long as there is no dispute about whether or how many personal days accrued that requires CBA interpretation – which there is not – it is state law, not the CBA, that entitles Diaz to pay upon separation. *Lueck*, 471 U.S. at 212 ("[I]t would be inconsistent with congressional intent under [§ 301] to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").

Courts in other jurisdictions have likewise declined to apply LMRA preemption to claims for accrued but unpaid vacation and other types of wages, even where the underlying right to vacation derives from the CBA. *See, e.g.*, *Shanley v. Tracy Logistics LLC*, 756 F. Supp. 3d 820, 834 (E.D. Cal. 2024) (rejecting LMRA preemption where the provision governing the right to be paid out vacation was "clear" and could be applied without requiring interpretation); *Ayon v. Zero Waste Sols., Inc*, No. 2:20-CV-02424, 2021 WL 4065716, at *3 (E.D. Cal. Sept. 7, 2021) ("Defendant offered vacation benefits to Plaintiffs, so the regulation of these benefits falls under state law 'with or without the CBA.'"); *Dickerson v. Palisades Med. Ctr., Inc.*, No. CIV. 13-3382 WJM, 2013 WL 5603927, at *5 (D.N.J. Oct. 9, 2013) (remanding wage claim based on failure to pay plaintiff for vacation and personal time because evaluating plaintiff's claim that she was not paid for time worked "would not be dependent on the meaning of any term in the CBA").

Similarly, in *Hamel*, the plaintiff sought overtime pay based on the employer's actual knowledge of hours worked outside of scheduled shifts. 2023 WL 12051503 at *1. The court

held the claim was not preempted because it was based purely on state law, not on the terms of the CBA. *Id.* at *3. Like Diaz, the plaintiff in *Hamel* did "not allege that employees have a contractual right" to the wages sought, but rather sought "pay pursuant to state law." *Id*. at *3. Also, as here, in *Hamel* there was "no plausible reason that resolution of this claim would require interpretation of the CBA," because "the employees' paystubs would likely supply the necessary information to calculate damages." *Id.*; *see also Cavallaro*, 678 F.3d at 8 (contrasting cases in which preemption is not applied because "there was no dispute about the amount" of wages owed with those in which preemption is applied because determining the amount owed requires interpretation of the CBA).

This case can be easily distinguished from cases in which LMRA preemption was applied because interpretation of the CBA was necessary to resolve disputes about the amount of wages owed or how to calculate those wages. There is no genuine dispute about the amount of wages owed or how to calculate those wages. Diaz separated from Smith with exactly 37 hours of accrued personal time. Compl. ¶ 21. There is no dispute that requires interpretation of the CBA, indeed nothing in the CBA would reveal how many days Diaz had accrued because that information is in Smith's payroll system. On this point, Smith attempts to conjure up a dispute where none exists, arguing that "a determination of how much personal time Diaz had available … requires an interpretation of the CBA." Doc. No. 11 at p. 6. *Smith's own internal records*, however, establish that Diaz had exactly 37 hours of personal time upon termination. Ex. A. And even without those records, no *interpretive work* beyond mere calculation would be necessary to ascertain Diaz's damages. The same is true for the class as a whole.

Unlike in *Mitchell v. Globe Newspaper Co.*, where plaintiffs disputed the pay rate they were entitled to for their vacation days, Diaz does not put his pay rate in dispute. 602 F. Supp. 2d at 261. And unlike in *Davis*, where a complicated wage structure with fluctuating pay required

the court to interpret the CBA to determine overtime pay, Diaz has already accrued his personal days and the court need only consult Smith's internal records to determine how much he is owed. 662 F. Supp. 3d at 157.

Section 301 does not apply here because Diaz's claims are rooted in state substantive law, not in rights or obligations contained in the CBA. The only question for the Court to answer is whether class members' accrued personal days were wages under Massachusetts law. The answer to that question can be found only in Massachusetts case law, not in the CBA. So unlike in *Teixeria*, where it was the CBA, not Massachusetts law that limited the amount an employee could be required to pay for health insurance premiums, here Massachusetts law determines whether personal days are wages and must be paid out. 351 F. Supp. 3d at 192-93.

Holding that Diaz's claim is preempted would advance neither of the twin goals of § 301. First, preemption would not ensure consistency in the interpretation of the applicable CBA because no CBA provision needs to be interpreted. Because Smith did not violate the CBA and Diaz does not contend otherwise, the only interpretation required is whether Smith's practice of withholding personal time upon separation violates the Wage Act, a question that is not intertwined with the CBA. Second, preemption would not preserve the effectiveness of arbitration, because this is not a contract dispute subject to arbitration. Smith creatively suggests otherwise, arguing that Diaz is precluded from asserting this claim because he "has not exhausted the grievance procedure as established by the CBA." Doc. No. 11 at 7. The flaw in Smith's logic, however, is that Diaz does not assert that Smith violated the CBA – it did not – so there is nothing to grieve. *See, Willis v. Board of Selectman of Easton,* 405 Mass.159, 164 (1989) (holding that the plaintiff "was not obligated to submit his dispute to the grievance procedure because the collective bargaining agreement does not govern his dispute"). *See also, International Bhd. of Elec. Workers, Local 1228 v. Freedom WLNE–TV, Inc.,* 760 F.2d 8, 10 (1st

14

Cir.1985) (parties to collective bargaining agreement bound to arbitrate only disputes within scope of arbitration clause). The rights Diaz seeks to vindicate are based in substantive state law, not the CBA. Pursuing a claim through the CBA's grievance process would serve no purpose.

Finding that the LMRA preempts the Wage Act claim asserted here would create an outcome that Congress could not have possibly intended when it passed a statute displacing state law claims "for violation of" a CBA: the complete displacement of substantive rights derived from state law. Courts have consistently rejected the idea that unionized employees like Diaz should be stripped of their substantive labor rights under state law while those same rights remain intact for a non-unionized employee. *See e.g.*, *Lueck* 471 U.S. at 212 (Section 301 does not give parties "the ability to contract for what is illegal under state law"); *Livadas*, 512 U.S. at 123 (Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law"). This Court should likewise reject Smith's attempt to evade Wage Act liability, hold that LMRA preemption does not apply, and remand the matter to state court where it belongs.

**C. The Court Should Not Reach the Merits of Smith's Rule 12(b)(6) motion.**

Regardless of how the Court rules on LMRA preemption, it should not address the merits of Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6). If the Court determines that Diaz's claim is ***not*** preempted by § 301 of the LMRA, no basis for federal jurisdiction exists. Thus, the Court must remand the case to superior court and deny Smith's Motion to Dismiss as moot. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded"); *see also McKinney*, 2024 WL 1509212, at \*8 (holding that because plaintiff's state wage claims were not preempted, "this Court lacks subject matter jurisdiction and must remand the matter to state court."); *Hamel*, 2023 WL 12051503, at \*5 (finding no LMRA preemption, remanding state wage claims for lack of

subject matter jurisdiction, and denying defendant's motion for summary judgment as moot).

Diaz acknowledges that, in limited circumstances, a court may permit discovery to develop the record where an arguable basis for LMRA preemption exists, but further factual development is needed to determine whether the resolution of the claim requires interpretation of a CBA. *See Lawless*, 894 F.3d at 18-20. While Diaz maintains that no arguable basis for finding LMRA preemption exists in this case, he recognizes that the First Circuit has endorsed supplemental jurisdiction in this unique situation. *Id.* In the event that the Court exercised supplemental jurisdiction on this basis, Diaz is confident that discovery would reveal no need to interpret the CBA because his 37 hours of unpaid accrued personal time are not actually in dispute. Even in that situation, however, dismissal is unwarranted.

**D.      The Allegations in the Complaint State a Plausible Claim for Violation of the Wage Act.**

Even if the Court had jurisdiction to rule on Smith's Motion to Dismiss, the allegations in Plaintiff's Complaint easily satisfy the Fed. R. Civ. P. 12(b)(6) "plausibility" standard. *See generally* Compl. Under the Wage Act, "any employee leaving his employment shall be paid in full on the following regular pay day, and, in the absence of a regular pay day, on the following Saturday; and any employee discharged from such employment shall be paid in full on the day of his discharge." M.G.L. c. 149 § 148. While M.G.L. c. 149 § 148 does not define "wages," it specifies that "wages" include any "holiday or vacation payments due to an employee under an oral or written agreement." *Id.*

Despite the absence of a specific definition of "wages" in the statute, the weight of Massachusetts authority supports that accrued personal time constitutes a "wage" under the Wage Act. *See e.g., Byrnes*, 30 Mass. L. Rptr. 413, 2012 WL 6608974, at *1. On summary judgment, the court in *Byrnes* held that accrued personal days were wages that must be paid upon

termination. *Id.* The court expressly rejected the argument that the Wage Act's inclusion of holiday and vacation pay "operates to exclude all other types of compensation." *Id.* Correctly anticipating the SJC's later analysis in *Mui*, the court in *Byrnes* explained that the words "holiday or vacation payments" were "merely illustrative, and not exclusionary." *Id.*; *see also Mui*, 478 Mass. at 712 ("[T]he absence of an explicit reference to sick pay in the statute does not end our inquiry.")

Similarly, this Court has previously denied a motion to dismiss a claim for the non-payment of personal time upon termination under the Wage Act. *See Roche*, 882 F. Supp. 2d at 257. In *Roche*, the employer argued that personal time could only be a compensable wage under the Wage Act if the employer agreed to pay employees for that time upon termination. *Id.*, 882 F. Supp. 2d at 256. In rejecting the employer's argument, the Court explained that because the employer agreed to provide personal time, the time was "more akin to assured non-discretionary compensation which may properly be considered a wage under the [Wage] Act." *Id.*, 882 F. Supp. 2d at 257. Recognizing the standard of motions to dismiss under Fed. R. Civ. P. 12(b)(6), the Court noted that "discovery may yield facts that will cause this court to reconsider [its] determination," however, that possibility did not justify dismissal at the pleading stage. *Id.*[1]

While the SJC has not squarely addressed whether accrued, paid personal time constitutes "wages," for the purposes of the Wage Act, its decision in *Mui* forecloses Smith's categorical denial that such time could ever constitute a wage, particularly under the circumstances alleged by Diaz. *Mui*, 478 Mass. at 713; Compl. ¶¶ 4, 15, 24. In rejecting the argument that accrued sick time constitutes a wage, the SJC in *Mui* explained that "unlike vacation time, which can be used

---

[1] The court also held that paid sick time could be compensable wages under the Wage Act, which the SJC later rejected in *Mui* because sick time is conditional on an employee being sick. *See Roche*, 882 F. Supp. 2d at 257; *see also Mui*, 478 Mass. at 713. Furthermore, had the *Roche* case not settled, it is possible the court would have held at the summary judgment stage that sick time is not a compensable wage.

for time away from work for any reason, sick time is to be used only when the employee or a family member is ill." *Mui*, 478 Mass. at 713. As such, the court reasoned because sick time may only be used upon the occurrence of a condition, employees "do not have an absolute right to spend down their sick time," unlike accrued vacation time. *Id.* As a result, the critical inquiry is whether the time at issue "can be used for time away from work for any reason," or whether it is tethered to the occurrence of a specific contingency. *Id.* This inquiry affords no weight to the specific label an employer assigns the block of paid time.

Here, Diaz alleges that "paid personal time may be used for any purpose," and that personal time was "not tethered to any specific contingencies, such as sickness, bereavement, or jury duty." Compl. ¶ 15. It requires little imagination to infer why Smith omits any mention of that passage in *Mui*: it is inconsistent with Smith's attempt to create a substantive distinction between personal time and vacation time. Doc. No. 11 at p. 10. In fact, by Smith's own admission, personal time has *fewer* restrictions than vacation time because it can also be used for personal emergencies on short notice. *Id*. Regardless, any such distinctions would need to be teased out in discovery and through trial – not on a motion to dismiss when the law so clearly tilts against Smith's position.

Notwithstanding the weight of authority in support of Diaz's position, Smith relies on a decades' old superior court decision, which found that unused personal and sick time did not constitute "wages" under the Wage Act. Doc. No. 11 at p. 9; *Souto v. Sovereign Realty Assocs., Ltd.*, No. 0501281, 23 Mass. L. Rptr. 386, 2007 WL 4708921, at *4 (Mass. Super. Ct. Dec. 14, 2007). However, the *Souto* decision is distinguishable for several reasons. *Souto*, decided in 2007, pre-dates the SJC's decision in *Mui* by over a decade, and therefore, the court did not have the benefit of the SJC's distinction between time that "can be used for time away from work for any reason," and time that may only be used upon the occurrence of a condition, such as sick

18

time. *See Souto*, 23 Mass. L. Rptr. 386, 2007 WL 4708921, at *1; *see also Mui*, 478 Mass. at 713. Moreover, unlike here, *Souto* was decided on summary judgment, which allowed the superior court to analyze the issue in the context of a developed factual record. *See Souto*, 23 Mass. L. Rptr. 386, 2007 WL 4708921, at *1. Also, unlike here, the plaintiff in *Souto* analyzed sick time and personal time together in its opposition to the defendant's motion for summary judgment, which precluded the court from analyzing the critical differences between the two categories of paid time. *See Souto*, 23 Mass. L. Rptr. 386, 2007 WL 4708921, at *3-*4; *see also* Plaintiff's Opposition to Defendants Motion for Summary Judgment, *Souto v. Sovereign Realty Associates, Ltd. et al.*, Civil Action No.: 2005-10864-JLT, Doc. No. 48, at pp. 6-7 (Oct. 5, 2006) (filed herewith as Exhibit "C"). Thus, *Souto* is inapposite.

Finally, Smith's reliance on Advisory 99/1 from the Massachusetts Office of the Attorney General, Fair Labor Division, does not support its position that a segregated bank of paid personal time, which can be taken in a manner substantially the same as vacation time, cannot qualify as a "wage" under the Wage Act. Doc. No. 11 at pp. 10-11. In relevant part, Advisory 99/1 notes, among other things, that employers who combine "…sick leave, personal leave, vacation leave, and/or other types of leave into one general category…instead of vacation leave should designate the amount of hours or days of the leave which are considered vacation time." Advisory 99/1: An Advisory from the Attorney General's Fair Labor Division on Vacation Policies, at p. 2 (filed herewith as Exhibit "D").

Advisory 99/1 does not apply here because Smith did not combine its different types of leave into one category of paid leave. Instead, it created a separate bank of paid personal time that employees could use in the same manner as their separate bank of vacation time. Complaint ¶¶ 2, 4, 15. Smith attempts to extrapolate a rule from Advisory 99/1 – that personal time can never qualify as a "wage" as a matter of law – which appears nowhere in the Advisory. Ex. D at

19

p. 2. Even if this were a plausible reading of Advisory 99/1, the SJC's analysis in *Mui* clarifies that the material inquiry is not the label the employer choose to use, but whether the time is available for use for any reason. *Mui*, 478 Mass. at 713. SJC precedent establishes that courts should give some deference to *reasonable* interpretations of the Attorney General[2] – not to self-serving interpretations by litigants like Smith who wish Advisory 99/1 said something it does not say.

In short, Smith's arguments elevate form of substance. Crediting Smith's approach would allow an employer to avoid paying any category of accrued paid time off simply by labeling it "personal time," even where employees may use that time for any purpose and the time functions no differently than vacation time. This formalistic position cannot be reconciled with *Mui*, nor other cases that have dealt with the issue of personal time directly. *Mui*, 786 Mass. at 713; *Roche*, 882 F. Supp. 2d at 257; *Byrnes*, 30 Mass. L. Rptr. 413, 2012 WL 6608974, at *1. Smith may try to distinguish its personal time from vacation time after discovery, but its attempt to dismiss Plaintiff's claim at this stage in the litigation conflicts with the plausibility standard and controlling Massachusetts precedent. Based on the allegations in the Complaint, Diaz has alleged a plausible compelling claim that his separately designated personal time is a wage that must be paid upon termination of employment.

## IV.     CONCLUSION

For the reasons set forth above, the Court should deny Smith's Motion to Dismiss and

---

[2] It is also worth noting that the Attorney General has moved away from informal advisories and opinion letters, going from 22 in 2002 and 10 in 2003 to just one in 2004 and a total of 33 (about 1.5 per year) in the 20 years since. https://www.mass.gov/info-details/minimum-wage-opinion-letters. Further, the SJC has made clear that an opinion letter "does not have the binding force attributable to a full-blown regulation." *Sullivan v. Sleepy's LLC*, 482 Mass. 227, 233 n.11 (2019) (a decision that led to the AGO rescinding an opinion letter issued on March 14, 2003); *see also* Morgan Brown & Joy Client Alert: Mass. Dept. of Labor Standards Rescinds Opinion Letters Concerning Wage Deductions (available at https://www.morganbrown.com/legal-update/client-alert-massachusetts-department-of-labor-standards-rescinds-opinion-letters-concerning-wage-deductions/).

remand the case to Massachusetts Superior Court.

Dated: June 5, 2026

Respectfully submitted,

The Plaintiff,
JONATHAN DIAZ, on behalf of himself
and all others similarly situated,
By his Attorneys,

*/s/ Raymond Dinsmore*
Raymond Dinsmore, Esq. (BBO # 667340)
Ryan B. Guers, Esq. (BBO # 713870)
Hayber, McKenna & Dinsmore, LLC
One Monarch Place, Suite 1340
Springfield, MA 01144
Phone: (413) 785-1400
Fax: (860) 218-9555
rdinsmore@hayberlawfirm.com
rguers@hayberlawfirm.com

*/s/ Francis J. Bingham*
Francis J. Bingham, Esq. (BBO # 682502)
Bingham Hopkins LLC
20 University Road, Suite 500
Cambridge, MA 02138
Phone: (617) 798-2303
Fax: (860) 218-9555
francis.bingham@binghamhopkins.com

*Attorneys for Plaintiff and the Putative
Class Members*

## CERTIFICATE OF SERVICE

I, Raymond Dinsmore, Esq., hereby certify that on June 5, 2026 a true copy of the above document was electronically filed through the Court's CMECF system, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and to unregistered participants via email.

/s/ Raymond Dinsmore
Raymond Dinsmore, Esq. (BBO # 667340)